IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

FULLSTEAM PERSONNEL LLC,    )
                            )
    Plaintiff,               )
                            )
v.                          )        CASE NO. 3:26-cv-382-ECM
                            )                 [WO]
ASHLEY E. KELM,             )
                            )
    Defendant.               )

**MEMORANDUM OPINION and ORDER**

While the disputes between these parties are wide-ranging—involving allegations of age discrimination and computer hacking, as well as an invocation of the Defend Trade Secrets Act of 2016—the actual claim before the undersigned in this case is narrow. Plaintiff, Fullsteam Personnel LLC, claims that Defendant, Ashley E. Kelm, violated her employment agreement by sending Plaintiff's proprietary information to her personal computer. (*See* doc. 1-2 at 13–15, paras. 64–77). The issue before the Court is narrower still. Plaintiff sought to vindicate its breach of contract claim in the Circuit Court of Lee County, Alabama, but Defendant removed to this Court citing the Court's federal question and diversity jurisdiction. (Doc. 1). Plaintiff asks the Court to remand its case to state Court, asserting that the Court lacks jurisdiction, and for an award of its fees and costs. (Doc. 11). Defendant opposes that motion—though she now concedes that the Court lacks federal question jurisdiction. (Doc. 24). Because the Court lacks diversity jurisdiction, too, this case is due to be remanded.

## I. BACKGROUND

On April 8, 2026, Plaintiff sued Defendant in state court for breach of contract based on alleged violations of Defendant's employment agreement, seeking an indeterminate amount of monetary damages and injunctive relief. (*See* docs. 1-2, 1-5, 1-7).  The case proceeded before the state court for several weeks, during which time that court set a hearing on Plaintiff's requests for injunctive relief, (doc. 1-20), which the court subsequently continued until June 2, 2026, to accommodate Defense counsel, (doc. 1-30). However, following an additional status conference on May 15, 2026, the state court rescheduled that hearing for May 27, 2026. (Doc. 19-33).  Less than three hours later, Defendant filed a notice of removal. (*See* docs. 1, 19-36).

Skeptical as to its jurisdiction, the undersigned immediately set the matter for a status conference. (Doc. 6).  In the interim, Plaintiff moved to remand, submitting that the Court plainly lacks jurisdiction over this matter. (Doc. 11).  Indeed, Plaintiff requests its fees and costs incurred in seeking to remand the case, arguing that "Defendant's removal lacks an objectively reasonable basis and appears motivated by delay." (*Id.* at 21).  At the hearing, the Court noted that Defendant's argument that the Court possessed federal question jurisdiction seemed dubious, but Defendant doubled down on its position that the Court had both diversity and federal question jurisdiction over this lawsuit.  Accordingly, the Court ordered the parties to brief the issue. (Doc. 17).

In response to Plaintiff's motion to remand, Defendant's position changed, and she conceded that the Court lacked federal question jurisdiction. (Doc. 24 at 1).  She now relies exclusively on diversity jurisdiction, arguing that the parties are completely diverse (which

2

is uncontested) and that the amount in controversy requirement is satisfied (which is hotly disputed). (*Id.* at 2–13).

Defendant's response then goes well beyond the Court's request for briefing as to its jurisdiction.   It includes a minutely detailed discussion of the merits and factual underpinnings of Defendant's age discrimination suit against her former employer, an affiliate entity of Plaintiff's (that is, a non-party to this suit); claims that two of Plaintiff's attorneys violated two separate rules of professional conduct in their dealings with one of Defendant's attorneys; and canvasses anti-SLAPP legislation across the country, commenting on an Eleventh Circuit decision pertaining to Georgia's anti-SLAPP law.[1] (Doc. 24 at 13–17).  Indeed, Defense counsel all but accuses Plaintiff and its attorneys of hacking into his personal computer. (*Id.* at 17–19).[2]  Plaintiff separately moves to strike the hacking allegations from Defendant's response. (Doc. 25).

## II.  LEGAL STANDARDS

### A.    Motion to Strike

"The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f).  Federal Rule of Civil

---

[1] Anti-SLAPP laws refer to legislation designed to target Strategic Lawsuits Against Public Participation (which are redundantly, but commonly, referred to as "SLAPP lawsuits").  In Defendant's words, a SLAPP suit is "a baseless legal action filed to intimidate, censor, or silence critics whose goal is not to win the case but to exhaust the defendant's finances and force them to abandon their rights through being required to mount a grueling, expensive defense." (Doc. 24 at 16).  Defendant claims the instant lawsuit "is the employment discrimination equivalent of a SLAPP suit." (*Id.*).

[2] In correspondence with one of Plaintiff's attorneys, one of Defendant's attorneys, Russell A. Kelm (who is also Defendant's father), explicitly accused Plaintiff's attorneys of hacking his email. (*See* doc. 25-1 at 5).

Procedure 7(a) limits the universe of filings that constitute "pleadings" to, basically, complaints and answers to complaints. *See* FED. R. CIV. P. 7(a)(1)–(7). So "courts have held that Rule 12(f) does not authorize courts to strike motions, affidavits, or memoranda in support of motions." *Silva v. Swift*, 333 F.R.D. 245, 248 (N.D. Fla. 2019) (citing *Harrison v. Belk, Inc.*, 748 F. App'x 936, 940 (11th Cir. 2018) ("[A] motion for summary judgment is no 'pleading' and, thus, may not be attacked by a motion to strike under [Rule] 12(f)." (citation omitted))).[3] In any event, motions to strike "are viewed with disfavor and are infrequently granted," especially "when the material at issue is merely impertinent or irrelevant." *Id.* at 247 (citations omitted); *see also Somerville v. Dep't of Health & Human Servs.*, 2025 WL 1167802, at *4 (M.D. Fla. Apr. 22, 2025) (noting that motions to strike "are routinely denied" and collecting cases).

## B.     Motion to Remand

"If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c); *see City of Vestavia Hills v. Gen. Fid. Ins. Co.*, 676 F.3d 1310, 1313 (11th Cir. 2012) ("[A]ll doubts about jurisdiction should be resolved in favor of remand to state court."); *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994) ("[R]emoval statutes are construed narrowly; where plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand."). Generally, "a defendant's notice of removal need only include a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart v.*

---

[3] Here and elsewhere the Court cites nonbinding authority. While these cases are not precedential, the Court finds them persuasive.

*Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014).  However, "when the plaintiff contests, or the court questions, the defendant's allegation," then the Court must find by the preponderance of the evidence that the amount in controversy exceeds the jurisdictional threshold. *Id.* at 88–89.  The defendant, as the removing party, bears this burden. *Dudley v. Eli Lilly & Co.*, 778 F.3d 909, 913 (11th Cir. 2014).

## C.      Request for Fees and Costs

If the district court remands a removed case, it "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c).  "Absent unusual circumstances, courts may award attorney[] fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005).  "But an award of fees under § 1447(c) does not require a showing that the defendant's position was 'frivolous, unreasonable, or without foundation.'" *Taylor Newman Cabinetry, Inc. v. Classic Soft Trim, Inc.*, 436 F. App'x 888, 890 (11th Cir. 2011) (per curiam) (quoting *Martin*, 546 U.S. at 138–39).  "Whether or not to award costs or attorney fees is within the sole discretion of the trial court." *Howard Griggs Trucking, Inc. v. Am. Cent. Ins. Co.*, 894 F. Supp. 1503, 1510 (M.D. Ala. 1995).

## III.  DISCUSSION

The Court addresses Plaintiff's motions to strike, remand, and recover its fees and costs in turn.

5

## A.    Motion to Strike

Plaintiff's motion to strike is due to be denied.  Because the relevant filing is not a pleading, it falls outside of Rule 12(f)'s ambit, which, by its terms, applies only to pleadings. *See* FED. R. CIV. P. 12(f); *Silva*, 333 F.R.D. at 248 ("Plaintiff's motion to strike asks this court to strike two motions, not pleadings.  Rule 12(f) does not authorize such relief.").  While the Court possesses the inherent authority to strike other filings, *see Silva*, 333 F.R.D. at 248 n.2, Plaintiff cites nothing to support its contention that the Court's authority would be properly exercised in this case, (*see* doc. 25); *cf. Fisher v. Whitlock*, 784 F. App'x 711, 713–14 (11th Cir. 2019) (discerning no abuse of discretion where a district court struck the plaintiff's *fifth motion* to reconsider its order denying her relief from the final judgment, citing the district court's "power to manage its docket and curb vexatious litigation").  So the Court will not strike Defendant's—certainly immaterial and apparently baseless—allegations that Plaintiff's counsel hacked into her lawyer's computer.[4]

## B.    Motion to Remand

But Plaintiff's motion to remand is due to be granted.  Although Plaintiff seeks unspecified actual and punitive damages in addition to injunctive relief in its complaint, (*see* doc. 1-2 at 24), Defendant makes no argument that those amounts satisfy the

---

[4] This is not to say that Mr. Kelm's conduct is not concerning.  Accordingly, the Court has ordered Mr. Kelm to show cause why he should not be sanctioned under Federal Rule of Civil Procedure 11. (*See* doc. 32).

jurisdictional threshold, (*see* doc. 24). Instead, she focuses exclusively on Plaintiff's request for injunctive relief. (*Id.* at 2–13).

"When a plaintiff seeks injunctive relief, the amount in controversy is the monetary value of the object of the litigation from the plaintiff's perspective." *Fastcase, Inc. v. Lawriter, LLC*, 907 F.3d 1335, 1342 (11th Cir. 2018) (citation omitted). Here, Plaintiff seeks to enjoin Defendant from using, disclosing, copying, transferring, storing, or maintaining its proprietary information, for fear that this information could cause it irreparable harm if it fell into the wrong hands. (Doc. 1-2 at 18–22, paras. 90, 97–99; *see* doc. 11 at 14). In its complaint, Plaintiff argued that this harm "would be virtually impossible to quantify with precision." (Doc. 1-2 at 19, para. 90). It says the same in its motion to remand. (*See* doc. 11 at 14 ("At this stage, Fullsteam itself is unable to determine the value of such injunctive relief.")).

Defendant nevertheless argues that jurisdiction properly lies. She contends that the point of this case, from Plaintiff's perspective, is "to prevent [her] from gathering and using evidence" for her age discrimination lawsuit against an affiliate entity. (Doc. 24 at 2–3). So, according to her, the value of this breach of contract case is the value Defendant would recover in that age discrimination case—her separate (and, apparently, as-yet-unfiled) lawsuit against Plaintiff's affiliate. (*Id.*). The value of which lawsuit, Defendant submits, can be demonstrated by her own settlement demand letters in the not-yet-filed age discrimination case. (*See id.* at 4 ("Blocking the use and retention of the documentary evidence accumulated by [D]efendant here would save [P]laintiff hundreds of thousands of dollars in likely damages, which were specified in the [three] different pre-suit

settlement demands . . . ."); *id.* at 11 ("Plaintiff's entire complaint seeks to preclude the Court from ever seeing the documents in dispute, which provide much of the evidentiary support for the claims that are the subject of the settlement demands.")).

This is the only argument Defendant made in opposition to remand,[5] and it fails to persuade. First and foremost, as Plaintiff notes, (doc. 26 at 3), it cannot preclude Defendant from seeking the confidential documents she needs to litigate her age discrimination claims through discovery in her discrimination case, where Plaintiff could also move for a protective order to maintain the integrity of its proprietary information. *See* FED. R. CIV. P. 26(c)(1). So as a matter of logic, the value of the injunction Plaintiff seeks is not equal to the value of Defendant's age discrimination claims, because those claims do not rise or fall on Plaintiff's success in obtaining an injunction.

Even setting that aside, while the "plaintiff-viewpoint rule" does not mean that the Court should not include "the plaintiff's potential liability" as part of the amount in controversy inquiry, *Fastcase*, 907 F.3d at 1344 (emphasis omitted), *this* lawsuit does not directly involve any liability on the part of Plaintiff, potential or otherwise. While the documents Plaintiff seeks may wind up offered as evidence in a future age discrimination lawsuit, that does not mean that the value of the documents *becomes* the value of the age

---

[5] Plaintiff liberally construes Defendant's response as including another argument, that "the amount in controversy is met because [Plaintiff] has demanded its fees and costs in contesting the instant removal." (Doc. 26 at 8). But the cited portion of Defendant's response is merely voicing her opposition to Plaintiff's request for fees and costs, not Plaintiff's motion to remand the case. (*See* doc. 24 at 13 ("[T]he Court should decline to assess fees and costs against Defendant . . . .")). Even if Defendant made this argument, the Court agrees with Plaintiff that it would prove fruitless. *See Stern v. First Liberty Ins. Corp.*, 424 F. Supp. 3d 1264, 1273 (S.D. Fla. 2020) ("[P]ost-removal events, such as the subsequent generation of attorney fees, will not retroactively establish subject[ ]matter jurisdiction." (citation omitted)).

discrimination suit. *See X Corp. v. Schobinger*, 2023 WL 4754452, at \*4 (W.D. Tex. July 25, 2023) ("The mere fact that [Twitter] seeks the return of its confidential information, which may prove relevant to the [separate] California lawsuit, does not mean that the value of such an injunction equals the total damages asserted in the class action suit."). While the lawsuits may be, in some way, related, that simply does not mean that their value is equivalent. *See id.* at \*5 ("The pending lawsuit is related to—not underlying—Twitter's claim for equitable relief. Because Twitter's injunction will not affect Schobinger's ability to pursue his California claim (nor vice versa), that lawsuit's value has virtually no effect on the amount-in-controversy here.").

Defendant does not meaningfully flesh out this legal argument, which is the core of her opposition to remand. Instead, she cites twenty separate cases for the, evidently uncontroversial, proposition that the Court can consider settlement offers as part of the amount in controversy inquiry.[6] (Doc. 24 at 4–11). But those cases—every single one of them—is inapposite, involving a *plaintiff's* demand to settle the *underlying* lawsuit, or merely discussing generally what might be relevant to the amount in controversy inquiry. *See Sierminski v. TranSouth Fin. Corp.*, 216 F.3d 945, 949 (11th Cir. 2007) ("[T]here is no good reason to keep a district court from eliciting or reviewing evidence outside the removal petition."); *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1212 n.62 (11th Cir. 2007) (noting that "settlement offers" constitute "other paper" under 28 U.S.C. § 1446(b));

---

[6] At least, the great bulk of the cases Defendant identifies are cited for that proposition. The diligent reader will note that some of the cited cases support slightly different propositions, and that other cases are not relevant at all to the amount in controversy issue. The Court nevertheless cites every case Defendant identified to show that it has conducted a comprehensive review of her argument.

*Williams v. Best Buy Co.*, 269 F.3d 1316, 1320 (11th Cir. 2001) ("Where the pleadings are inadequate, we may review the record to find evidence that diversity jurisdiction exists."); *Burns*, 31 F.3d at 1097 ("While [a] settlement offer, by itself, may not be determinative, it counts for something."); *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002) ("A settlement letter is relevant evidence of the amount in controversy if it appears to reflect a reasonable estimate of the plaintiff's claim."); *United Food & Com. Workers Union v. CenterMark Props. Meriden Square, Inc.*, 30 F.3d 298, 305 (2d Cir. 1994) ("When the pleadings themselves are inconclusive as to the amount in controversy, however, federal courts may look outside those pleadings to other evidence in the record."); *McKenzie v. Auction.com*, 644 F. Supp. 3d 994, 997–98 (M.D. Ala. 2022) (accepting the plaintiffs' $125,000 valuation of their claims in their settlement demand letter); *Wilder v. Genie Healthcare, Inc.*, 2022 WL 4110905, at *2–3 (N.D. Ala. 2022 Sep. 8, 2022) (remanding a case for failure to satisfy the jurisdictional threshold despite the plaintiff's demand letter "requesting more than $200,000"); *Sturkie v. Lovvorn*, 2016 WL 10043466, at *2 (N.D. Ala. Nov. 14, 2016) (denying a motion to remand on the strength of the plaintiff's $100,000 demand letter, which was based on the plaintiff's injuries that were the subject of that lawsuit); *Nationwide Prop. & Cas. Ins. Co. v. Dubose*, 180 F. Supp. 3d 1068, 1072 (S.D. Ala. 2016) ("Without a doubt, demand letters are relevant and may be considered in evaluating the § 1332 amount in controversy."); *Mitchell v. Golden Living Nursing Home*, 2016 WL 3406239, at *2 (M.D. Ala. June 15, 2016) ("While a settlement offer alone is not determinative, because such letters commonly reflect puffing or posturing, it is relevant evidence of the amount in controversy if it appears to reflect a reasonable estimate of the

plaintiff's claim."); *Sims v. Valluzzo*, 2016 WL 3211430, at *3 (S.D. Ala. June 9, 2016) ("Without question, demand letters are relevant and may be considered in assessing whether the jurisdictional amount in controversy is satisfied."); *Ray v. GPR Hosp. LLC*, 2015 WL 4717400, at *4 (N.D. Ga. Aug. 7, 2015) ("Clearly indicative of [the p]laintiff's intent to recover damages above the jurisdictional threshold is a $150,000 settlement offer that [the p]laintiff made during the pendency of this action. Of course, this settlement offer was not among [the d]efendant's removing documents, but the offer is nevertheless proper for the [c]ourt's consideration." (footnote omitted)); *McCullough v. Plum Creek Timberlands, L.P.*, 2010 WL 55862, at *4 (M.D. Ala. Jan. 4, 2010) ("[A] settlement letter is admissible evidence of the amount in controversy at the time of removal." (quotation omitted)); *Jackson v. Select Portfolio Servicing, Inc.*, 651 F. Supp. 2d 1279, 1281 (S.D. Ala. 2009) ("A settlement offer can of course constitute an 'other paper' within the meaning of 28 U.S.C. § 1446(b)."); *Bankhead v. Am. Suzuki Motor Corp.*, 529 F. Supp. 2d 1329, 1333–34 (M.D. Ala. 2008) (denying the plaintiff's motion to remand his suit to state court because he had demanded $150,000 to settle his claims against the defendant); *Hardy v. Jim Walter Homes, Inc.*, 2007 WL 1889896, at *6 n.11 (S.D. Ala. June 28, 2007) ("To be sure, th[e plaintiff's] settlement offer is not dispositive of the amount in controversy issue, but it is evidence that is properly considered."); *Callahan v. Countrywide Home Loans, Inc.*, 2006 WL 1776747, at *3–5 (N.D. Fla. June 26, 2006) (discussing whether removal was timely, not whether the jurisdictional threshold had been reached); *Williams v. Safeco Ins. Co.*, 74 F. Supp. 2d 925, 929 (W.D. Mo. 1999) (same); *Golden Apple Mgmt. Co. v. GEAC Comps., Inc.*, 990 F. Supp. 1364, 1368 (M.D. Ala. 1998) (giving weight to a

11

demand letter "[g]iven the specific information that the letter provide[d] to support its claim for damages," indicating that the "plaintiff was offering a reasonable assessment of the value of its claim").

None of these cases involves a *defendant's* demand to settle a *separate* (unfiled) lawsuit, only tangentially related to the underlying action. Defendant has not directed the Court to any authority that supports her argument. And that's not surprising. Permitting defendants to avail themselves of diversity jurisdiction based on their separate claims against the plaintiff would permit an effective end-run around the general rule, articulated by a number of district courts in this circuit, that counterclaims are not considered part of the amount in controversy. *See First Guar. Bank & Tr. Co. v. Reeves*, 86 F. Supp. 2d 1147, 1153 (M.D. Fla. 2000) ("Coupled with the strong mandate consistently expressed by the Eleventh Circuit against expanding federal removal jurisdiction, the [c]ourt is constrained to disregard the counterclaim in calculating the jurisdictional amount in controversy."); *Hill v. MONY Life Ins. Co.*, 75 F. Supp. 2d 1328, 1331 (M.D. Ala. 1999) ("This court is persuaded by the precedent discussed, and by the Eleventh Circuit's requirement that this court construe the removal statute narrowly, that it is not appropriate to consider the [d]efendants' counterclaims in determining whether or not the jurisdictional amount has been met."); *Conference Am., Inc. v. Q.E.D. Int'l, Inc.*, 50 F. Supp. 2d 1239, 1243 (M.D. Ala. 1999) ("[T]he court finds that [the d]efendant's [c]ounterclaim should not be considered in determining the amount in controversy in the context of removal

jurisdiction.").[7]  Indeed, it would permit defendants to remove on the basis of *unasserted* counterclaims—a bridge altogether too far.

Of course, parties generally do not litigate for the love of the game, and the Court does not take Plaintiff to seriously contend that the injunction it's seeking is worthless.  But even if the disclosure of Plaintiff's proprietary information were to prove damaging to it, Defendant filed an affidavit stating that she "has no intention of sharing the documents which she gathered with anyone but her attorney and with the Court when she is able to file a lawsuit." (Doc. 24-4 at 3, para. 11).  The fact that the risk of harm Plaintiff seeks to avoid with its injunction is slight tends to suggest that the value of the injunction itself is relatively low. *See Schobinger*, 2023 WL 4754452, at \*5 ("[T]he object of Twitter's injunction is to remove the *possibility* of [the improper disclosure of its confidential information].   But because this possibility appears slim, it is not clear through a preponderance of the evidence that it is worth more than \$75,000.").

In the end, Defendant has not offered evidence or argument sufficient to render Plaintiff's request for an injunction of indeterminate value concrete.  Because Defendant has not carried her burden to show that the relief Plaintiff seeks is worth more than the

---

[7] While the Eleventh Circuit has once assumed without deciding that a counterclaim *could* be considered as part of the amount in controversy requirement, it expressly did so only because remand was required either way. *Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 808 n.3 (11th Cir. 2003) ("Because Federated would not reach the jurisdictional minimum even if we extracted a rule from *Horton* [*v. Liberty Mutual Insurance Co.*, 367 U.S. 348 (1961)] or elsewhere that consideration of counter[]claims in determining the amount in controversy is proper, we decline to pass judgment today on whether such a method of calculation is proper."); *see also Reeves*, 86 F. Supp. 2d at 1241–42 (distinguishing *Horton*, and noting that other courts had done the same, because *Horton* was originally filed in federal court, not removed, and explaining that "this difference [is] significant because of policy considerations that arise in the removal context"); *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999) ("Because removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly.").

jurisdictional threshold, the Court lacks jurisdiction over this matter, and remand is required.

## C.    Motion for Fees and Costs

Plaintiff also seeks its fees and costs in remanding this case back to state court. (Doc. 11 at 21–23).  It argues that Defendant had no reasonable basis to seek removal, and that "the timing and circumstances of Defendant's removal" (following closely on the heels of an adverse ruling from the state court) "suggest Defendant's removal is dilatory in nature." (*Id.* at 22).  A review of the state court record indicates that there might be something to this argument.  On May 5, 2026, that court set Plaintiff's pending motions for a temporary restraining order and a preliminary injunction for a May 14, 2026 hearing. (Doc. 19-20). On May 11, 2026, Defendant filed a limited notice of appearance, noting that she contested the Court's jurisdiction over her, (doc. 19-26), and moved to continue the hearing pending proper service and resolution of her forthcoming motion to dismiss, (doc. 19-28).  The state court granted that motion in part, resetting the hearing for June 2, 2026. (Doc. 19-30).  But, following a hearing on May 15, 2026, the state court moved the hearing up to May 27, 2026. (Doc. 19-33).  A few days later, the state court entered an order stating the following:

> This [c]ourt held a conference call on this case with the attorneys of record at approx[imately] 9:00 a.m. on May 15, 2026. The undersigned was informed that on May 15, 2026, at 11:58 a.m. a Notice of Removal was filed with this court. Therefore, this court does not have jurisdiction.

(Doc. 19-36).

14

A few factors militate in favor of awarding Plaintiff fees and costs. Despite initially arguing that the Court possessed federal question jurisdiction over her claim, Defendant ultimately conceded that position was meritless. (Doc. 24 at 1 ("Defendant is no longer seeking federal question removal since it appears that statutory and case law does not give federal jurisdiction to claims or defenses under the Defend Trade Secrets Act of 2016 . . . .")). It also appears that Defendant had no evidence that the value of the injunction (or any of the other relief) Plaintiff seeks is worth more than $75,000 to it, which Defendant conceded the law required. (*See id.* at 4 ("The Eleventh Circuit has consistently held that when a plaintiff seeks injunctive or declaratory relief, 'the amount in controversy is the monetary value of the object of the litigation from the plaintiff's perspective.'" (quoting *Fastcase*, 907 F.3d at 1342))). Add to this the circumstantial evidence that Defendant's improvident removal may also have been improper, and the Court would be well within its discretion to grant Plaintiff's request. *See Gray v. N.Y. Life Ins. Co.*, 906 F. Supp. 628, 635 (N.D. Ala. 1995) ("The idea behind § 1447(c) attorney[] fees is not to limit removals to those that are entirely risk-free but to obligate the defendant to make a risk assessment and to be prepared for the consequences. . . . The words of § 1447(c) constitute a clear warning to defendants: 'Remove at your peril!'")

But hindsight is 20/20, and the fact that an attempt to remove does not pan out is not enough, on its own, to warrant an award of fees and costs. *See Devine v. Prison Health Servs., Inc.*, 212 F. App'x 890, 892 (11th Cir. 2006) ("[T]here is no presumption in favor of the award of fees and costs upon the grant of remand for improvident removal." (citing *Martin*, 546 U.S. at 140)); *Gray*, 906 F. Supp. at 631 ("[T]he imposition of fees in the event

15

of an erroneous removal is not automatic but a matter for the exercise of the sound discretion of the court[] . . . .").  Indeed, Plaintiff itself concedes it "is unable to determine the value of [the] injunctive relief" it asks for. (Doc. 11 at 14).  The fact that Defendant tried and failed to attach value to such indeterminate relief does not mean that she now has to pay Plaintiff for the pleasure of having her case remanded. *See Gray*, 906 F. Supp. at 635 ("[T]he removing defendant should not be penalized by having to pay the plaintiff's attorney fees" in "[a] diversity case in which the plaintiff, either deliberately or inadvertently, is ambiguous in his statement of the *ad damnum* of the state court.")

Ultimately, whether to exact and mete out fees and costs has been left by Congress to the Court's discretion. *See* 28 U.S.C. § 1447(c) ("An order remanding the case *may* require payment of just costs . . . ." (emphasis added)); *Martin*, 546 U.S. at 141 ("Absent unusual circumstances, courts *may* award attorney[] fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." (emphasis added)).  Though the Court has the power to punish Defendant for her conduct, it exercises its discretion not to do so.  This Court would rather err on the side of declining to award fees that might well be warranted than to unnecessarily chill the right to remove. *See Martin*, 546 U.S. at 140 ("If fee shifting were automatic, defendants might choose to exercise this right only in cases where the right to remove was obvious.  But there is no reason to suppose Congress meant to confer a right to remove, while at the same time discouraging its exercise in all but obvious cases.").

16

## IV. CONCLUSION

For the reasons stated, and for good cause, it is

ORDERED as follows:

1.      Plaintiff's motion to strike (doc. 25) is DENIED.

2.      Plaintiff's motion to remand (doc. 11) is GRANTED.

3.      Plaintiff's motion for fees and costs (doc. 11) is DENIED.

4.      This case is REMANDED to the Circuit Court of Lee County, Alabama.  The Clerk of the Court is DIRECTED to take all steps necessary to effectuate the remand to the Circuit Court of Lee County, Alabama.

5.      All other pending motions are DENIED as moot.

6.      The Court retains jurisdiction over the Rule 11 proceedings against Mr. Kelm. (*See* doc. 32).

DONE this 8th day of July, 2026.

                            /s/ Emily C. Marks
                    EMILY C. MARKS
                    UNITED STATES DISTRICT JUDGE